UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RUEBEN PAUL PHILL,<br><br>Defendant. | No. 2:25-cr-00162-DC-1<br><br>ORDER DENYING DEFENDANT RUEBEN PAUL PHILL'S MOTION TO DISMISS THE INDICTMENT<br><br>(Doc. No. 11) |

This matter came before the court on November 14, 2025 for a hearing on Defendant Rueben Paul Phill's motion to dismiss the indictment with prejudice under Federal Rule of Criminal Procedure 12(b)(1) due to violation of his Sixth Amendment right to counsel, specifically due to the government's failure to adequately compensate his appointed counsel. (Doc. No. 11.) For the reasons explained below, Defendant's motion will be denied.

**BACKGROUND**

On July 17, 2025, Defendant was indicted for one count of conspiracy to traffic in firearms and two counts of felon in possession of a firearm. (Doc. No. 5.) This case is in pretrial proceedings with a status conference currently set for January 16, 2026, with time excluded through that date. (Doc. No. 18.) The court has not set a trial date for this case.

During Defendant's initial appearance, the court appointed counsel, specifically Attorney Tamara L. Soloman, to represent Defendant in this case pursuant to the Criminal Justice Act

1

("CJA"), 18 U.S.C. § 3006A. (Doc. No. 5.)

The CJA provides "[a]ny attorney appointed pursuant to this section, . . . shall, at the conclusion of the representation or any segment thereof, be compensated" at specific hourly rates, by submitting vouchers to the Judiciary.[1] 18 U.S.C. § 3006A(d)(1). The Judiciary acknowledged that funding for CJA panel attorneys for fiscal year 2025 were depleted around July 3, 2025. *See* CJA Panel Attorney Funds Information FY 2025, available at https://www.uscourts.gov/about-federal-courts/defender-services/cja-panel-attorney-funds-informationfy-2025 (updated Oct. 6, 2025). The Judiciary also confirmed that "[p]anel attorney payments will resume when a continuing resolution is passed by Congress and signed into law by the President." *See id*.

Since April 2025 through the November 14 hearing, Attorney Soloman had not received compensation for the cases in which the court appointed her as CJA counsel to represent indigent criminal defendants. (Doc. No. 11 at 2.) At the time Attorney Soloman was appointed to represent Defendant in this case, on July 17, 2025, she was aware that CJA funding had run out and that CJA payments would resume when Congress passed a new federal budget, which the Judiciary expected to be October 1, 2025. In other words, Attorney Soloman did not expect to receive any CJA payments for her work in representing Defendant in this case until October 1, 2025.[2] Attorney Soloman further explained that she thought she could "make do" until the payments resumed as expected in October 2025 because she (along with other CJA panel attorneys) "was assured that payments would resume once Congress passed a budget for Fiscal Year 2026." (Doc. No. 11 at 2.) However, Congress failed to pass a budget, leading to a government shutdown that "result[ed] in a continued funding lapse that began on October 1, 2025, with no end in sight." (Doc. No. 11 at 2.) Six days later, on October 7, 2025, Defendant filed the pending motion, arguing that "[t[he non-payment situation creates an impermissible conflict between counsel's

---

[1] "Representation under [the CJA] shall include counsel and investigative, expert, and other services necessary for adequate representation." 18 U.S.C. § 3006A(a).

[2] In Defendant's motion and at the November 14, 2025 hearing, Attorney Soloman explained that she nonetheless accepted this appointment because she had already been appointed to serve as Defendant's counsel in his related case, *United States v. Phill*, 2:24-cr-00001-DC-1, in which Defendant is charged with violating his conditions of supervised release. (Doc. No. 11 at 1–2.)

2

duty to zealously represent the client and counsel's need for economic survival." (*Id.* at 3.) Defendant argues "[t]his conflict undermines the attorney-client relationship and compromises the quality of representation guaranteed by the Sixth Amendment." (*Id.*)

The government filed an opposition to Defendant's motion to dismiss the indictment on October 31, 2025. (Doc. No. 16.) On November 10, 2025, Defendant filed a reply thereto. (Doc. No. 17.) Two days later, on November 12, 2025, Congress passed and the President signed a continuing resolution that ended the federal government shutdown and provided funds for the Judiciary to make payments to CJA attorneys both for the backlog of vouchers that had already been submitted and for ongoing defense operations. The court understands from counsel's representations at the November 14, 2025 hearing that backlog payments are expected to be made within two weeks from that date (i.e., during the last two weeks of November 2025).

**LEGAL STANDARD**

Federal Rule of Criminal Procedure 12(b)(1) allows a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). "Generally, Rule 12(b) motions are appropriate to consider 'such matters as former jeopardy, former conviction, former acquittal, statute of limitations, immunity, [and] lack of jurisdiction.'" *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) (citation omitted).

However, a district court may also dismiss an indictment under its inherent supervisory powers "(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct." *United States v. Bundy*, 968 F.3d 1019, 1030 (9th Cir. 2020) (citing *United States v. Struckman*, 611 F.3d 560, 574 (9th Cir. 2010)). "Dismissal is appropriate when the investigatory or prosecutorial process has violated a federal constitutional or statutory right and no lesser remedial action is available," *United States v. Barrera-Moreno*, 951 F.2d 1089, 1092 (9th Cir. 1991), and the defendant suffers "substantial prejudice," *United States v. Chapman*, 524 F.3d 1073, 1087 (9th Cir. 2008) (citation omitted).

/////

## ANALYSIS

**A.      Sixth Amendment Right to Counsel**

The Sixth Amendment provides as follows:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI. The United States Supreme Court has construed the Sixth Amendment right to the assistance of counsel "to mean that in federal courts counsel must be provided for defendants unable to employ counsel unless the right is competently and intelligently waived." *Gideon v. Wainwright*, 372 U.S. 335, 340 (1963). "This right has been accorded, . . . 'not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.'" *Mickens v. Taylor*, 535 U.S. 162, 166 (2002) (quoting *United States v. Cronic*, 466 U.S. 648, 658 (1984)). "It follows from this that assistance which is ineffective in preserving fairness does not meet the constitutional mandate." *Micken*, 535 U.S. at 166 (citing *Strickland v. Washington*, 466 U.S. 668, 685–86 (1984)).

The Supreme Court has long recognized "that mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense." *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985). The Supreme Court further acknowledged that while the government need not "purchase for the indigent defendant all the assistance that his wealthier counterpart might buy," "fundamental fairness entitles indigent defendants to 'an adequate opportunity to present their claims fairly within the adversary system.'" *Id.* (quoting *Ross v. Moffitt,* 417 U.S. 600, 612 (1974)). In implementing this principle, the Supreme Court emphasized that the focus is on ensuring the "basic tools of an adequate defense" are "provided to those defendants who cannot afford to pay for them." *Ake*, 470 U.S. at 77 (citation omitted).

4

Under the Sixth Amendment, defendants have a "right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981); *Lockhart v. Terhune*, 250 F.3d 1223, 1226 (9th Cir. 2001) ("A criminal defendant's Sixth Amendment right to counsel includes the right to be represented by an attorney with undivided loyalty."). However, the Sixth Amendment does not guarantee "a 'meaningful relationship' between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14 (1983); *see also McGill v. Shinn*, 16 F.4th 666, 690 (9th Cir. 2021) (noting that "[n]othing in the Sixth Amendment suggests that an accused is entitled to 'rapport' with his attorney").

"[T]he proper standard for attorney performance is that of reasonably effective assistance." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Notably, the standard is not one of perfect performance, nor a standard that requires the absolute best from the defendant's attorney. Indeed, "an attorney's violation of a rule of ethics or professional conduct before trial does not constitute *per se* ineffective assistance of counsel." *United States v. Nickerson*, 556 F.3d 1014, 1019 (9th Cir. 2009) ("There is no Ninth Circuit rule that the violation of a rule of ethics or professional conduct by counsel before trial constitutes ineffective assistance of counsel *per se*.").

"To establish ineffective assistance of counsel, [the defendant] must bear the burden of proving that defense counsel's performance fell below an objective standard of reasonableness and that the deficiency prejudiced him." *United States v. Jackson*, 98 F. App'x 639, 639–40 (9th Cir. 2004) (citing *Strickland*, 466 U.S. at 685). "Prejudice is shown when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Bert*, 387 F. App'x 757, 758 (9th Cir. 2010) (quoting *Strickland*, 466 U.S. at 694)).

Though claims of ineffective assistance of counsel are most often raised by defendants in post-judgment habeas proceedings, district courts have discretion to hear pre-judgment ineffective assistance of counsel claims. *United States v. Steele*, 733 F.3d 894, 897 (9th Cir. 2013) (explaining that "when a claim of ineffective assistance of counsel is first raised in the district court prior to the judgment of conviction, the district court may, and at times should, consider the claim at that point in the proceeding"). A defendant who feels that they are not being provided

1  effective assistance of counsel may raise that issue with the court in a motion for the appointment
2  of new counsel. *See United States v. George*, 85 F.3d 1433, 1438 (9th Cir. 1996) (a district
3  court's denial of an indigent defendant's motion to substitute new counsel is reviewed for abuse
4  of discretion). Moreover, an appointed lawyer who feels that they are no longer able to provide
5  effective assistance of counsel must file a motion to be relieved as counsel and to have new
6  counsel appointed for the defendant. *United States v. Franklin*, 650 F. App'x 391, 393 (9th Cir.
7  2016) (finding the district court did not err in declining to grant defendant's fourth motion for
8  new counsel after having granted the prior three attorneys' motions to withdraw). Indeed, Rule
9  1.16(a) of the California Rules of Professional Conduct outlines several grounds upon which an
10 attorney "*shall* withdraw from the representation of a client." Cal. R. Prof. Conduct 1.16(a)(4)
11 (emphasis added).

**B.     Defendant Phill's Motion to Dismiss the Indictment**

13        Here, Defendant asserts that his Sixth Amendment right to counsel has been violated due
14 to "the prolonged non-payment of appointed counsel." (Doc. No. 11 at 3.) Defendant argues that
15 "the promise of *Gideon* cannot be fulfilled when counsel is appointed but left unpaid
16 indefinitely." (*Id.*) However, as noted above, at the time Attorney Soloman accepted the
17 appointment to serve as Defendant Phill's counsel in this case, she was aware that CJA payments
18 had already stopped being processed and were not expected to resume until October 1, 2025. The
19 pending motion was filed only six days after that expected payment date passed and no payments
20 were made.

21        Most importantly, Attorney Soloman continued working on Defendant Phill's defense,
22 including after October 1, 2025, as emphasized in his pending motion, stating "[d]espite the lack
23 of compensation, counsel has continued to represent the Defendant to prevent immediate
24 prejudice . . . ." (Doc. No. 11 at 2.) Notably, the motion does not identify any "basic tools of an
25 adequate defense," *Ake*, 470 U.S. at 77, that Defendant Phill has not been provided, nor articulate
26 any basis upon which to find defense counsel's performance to be deficient. Rather than describe
27 a particular conflict of interest with Defendant Phill or point to any specific incidents of
28 ineffective assistance of counsel in Defendant Phill's defense in this case, the pending motion

contains several broad assertions that are generally applicable to CJA panel attorneys. (Doc. No. 11 at 2–6.) For example, Defendant asserts that "[n]o attorney can be expected to work indefinitely without compensation while maintaining the zealous advocacy required by professional standards and constitutional mandate." (*Id.* at 3.) But the question before the court is not whether Attorney Soloman can be expected to continue representing Defendant Phill indefinitely without adequate compensation. The question is whether—despite the lapse in funding—Attorney Soloman has nonetheless provided effective assistance of counsel to Defendant Phill.[3] The record in this case indicates that she has done so, and as Attorney Soloman represented at the November 14, 2025 hearing, she has made do under the circumstances.[4] Thus, Defendant Phill has not met his burden of showing his counsel's performance fell below an objective standard of reasonableness and that such performance prejudiced him in this case. Accordingly, the court finds defense counsel has provided effective assistance of counsel to date.

Further, because the government shutdown ended a few days before the hearing and in re-opening the government Congress provided funds for the Judiciary to make payments to CJA attorneys, counsel acknowledged that circumstances have changed and the lack of compensation was no longer indefinite. Nevertheless, counsel argued that dismissal of the indictment was the

---

[3] The court acknowledges the extreme hardship that the lapse in funding placed on CJA panel attorneys, many of whom did not receive any CJA payments since late-Spring and early-Summer 2025, well before the government shutdown exacerbated an already untenable situation. The court fully recognizes the extraordinary undertaking by CJA attorneys during this unprecedented time, though this motion necessarily focuses on the individual circumstances of Defendant Phill and the assistance of counsel he has received in this case.

[4] In Defendant Phill's reply brief, counsel asserts that she has been unable to fund travel to meet with Defendant Phill, (Doc. No. 17 at 2), though the court notes that Defendant Phill is housed in Yuba County Jail, less than an hour from Sacramento, California. Counsel also asserts that she has been unable to fund an investigator, but at the November 14, 2025 hearing, counsel did not express any attempts to hire an investigator or difficulties in doing so. Counsel did state that she had been unable to hire an expert to review cell phone text messages produced by the government in discovery, but that attempt was made about one month before Defendant Phill filed the pending motion. Under these circumstances, particularly where funding has now resumed, the court does not find that the temporary delay in retaining the support services of an expert constitutes ineffective assistance of counsel nor a deprivation of the "basic tools of an adequate defense." *Ake*, 470 U.S. at 77.

only appropriate remedy for the purported Sixth Amendment violation.[5]

However, for all of the reasons explained above, the court finds that Defendant Phill has not shown a Sixth Amendment violation, and on that basis, the court will deny Defendant Phill's motion to dismiss the indictment.[6]

**CONCLUSION**

Accordingly, Defendant Phill's motion to dismiss the indictment (Doc. No. 11) is DENIED.

IT IS SO ORDERED.

Dated:   **November 21, 2025**

Dena Coggins
United States District Judge

---

[5] In opposing the pending motion, the government argues that "[t]o the extent counsel is unable to perform their ethical duties due to the lapse of payment, the remedy is not dismissal of the Indictment; it is to file a motion to withdraw." (Doc. No. 16 at 5.) Notably, counsel has not filed a motion to withdraw in this case. Given that counsel has provided effective assistance to date and the lapse in funding that may have otherwise prevented her from continuing to do so has been resolved, the court need not address this issue further.

[6] The court recognizes that other judges in this District have addressed similar motions to dismiss an indictment due to the lapse in CJA funding, and some have found Sixth Amendment violations, *see United States v. Ortiz*, No. 2:24-cr-00302-JAM, 2025 WL 3157821 (E.D. Cal. Nov. 12, 2025); *United States v. Evanovich*, No. 2:24-cr-00079-DJC, 2025 WL 3208308 (E.D. Cal. Nov. 17, 2025), and others have not found a Sixth Amendment violation, *see United States v. Vasquez*, No. 2:25-cr-135-WBS, 2025 WL 2961906, at *4 (E.D. Cal. Oct. 20, 2025) ("Vasquez's argument for a conflict of interest might be more persuasive had his counsel not accepted appointment after she was on notice that funding for CJA-appointed counsel had already been exhausted. To date, Vasquez's counsel has not filed a motion to withdraw, as would be proper in the event of a *genuine* conflict of interest."). The court finds the decisions in *Ortiz* and *Evanovich* to be distinguishable, as both of those defendants had upcoming trial dates and counsel were unable to adequately prepare for trial due to the lapse in funding. *See Ortiz*, 2025 WL 3157821, at *1 ("Trial is set in this matter for January 26, 2026, a mere ten weeks from now. To expect defense counsel to properly prepare for trial, while consistently denying her the tools to do so is, in this Court's view, not only unconscionable but also unconstitutional."); *see Evanovich*, 2025 WL 3208308, at *1 ("To expect Defendant's Counsel to adequately prepare for a trial currently set for February 2026 while consistently denying him the tools to do so would be, in this Court's view, not only unconscionable, but also unconstitutional."). In contrast, a trial date has not been set in this case.